JOURNAL ENTRY AND OPINION
Pursuant to App.R. 26(B), appellant William McKinley has filed an application for reopening, State v. McKinley (June 22, 2000), Cuyahoga App. No. 76443, unreported. In his application, McKinley proposes two assignments of error:
 I. TRIAL COURT ERRED BY DEPRIVING DEFENDANT OF THE KNOWINGLY AND INTELLIGENTLY CHARACTERS OF HIS PLEA IN FAILING TO IMPOSE A SENTENCE AT PLEA ACCEPTANCE WHEN OTHERWISE PROVED PREJUDICIAL (sic).
 II. TRIAL COURT ERRED IN ITS DISCRETION BY VIOLATING DEFENDANT'S PRIVILEGE AGAINST SELF-INCRIMINATION WHEN IT CONSIDERED EVIDENCE FROM A CHARGE WHICH DEFENDANT WAS ACQUITTED OF THEREBY VIOLATING RIGHT AGAINST DOUBLE JEOPARDY AND RIGHT TO DUE PROCESS OF THE LAW.
On May 21, 2001, the State of Ohio, through the Cuyahoga County Prosecutor's Office, filed a memorandum of law in opposition to the application for reopening.
The Cuyahoga Grand Jury indicted William McKinley for one count of aggravated murder with a firearm specification and five counts of attempted aggravated murder with a repeat violent offender and firearm specifications. Pursuant to a plea agreement, McKinley pleaded guilty to count one, which was amended to involuntary manslaughter and the remaining counts were nolled. On direct appeal, this court affirmed McKinley's conviction in State v. McKinley (June 22, 2000), Cuyahoga App. No. 76443, unreported. Thereafter, on August 21, 2000, McKinley's new counsel appealed to the Supreme Court of Ohio which denied the appeal on October 25, 2000. For the following reasons, we decline to reopen McKinley's original appeal.
As mandated by App.R. 26(B)(2)(b), an application for reopening must be filed within ninety days of journalization of the appellate judgment which the applicant seeks to reopen. The applicant must establish "good cause" if the application for reopening is filed more than ninety days after journalization of the appellate judgment. State v. Cooey (1995),73 Ohio St.3d 411, 653 N.E.2d 252; State v. Reddick (1995),72 Ohio St.3d 88, 647 N.E.2d 784.
State v. McKinley was journalized on July 3, 2000. McKinley did not file his application for reopening until April 13, 2001, almost one year after journalization of the appellate judgement in State v. McKinley,supra. Thus the application is untimely on its face.
In an attempt to establish "a showing of good cause," McKinley states that his lack of legal expertise and his unawareness of the procedure to reopen his appeal constitutes good cause. However, this court and the Supreme Court of Ohio have firmly established that a lack of legal training is not a viable ground for establishing "good cause" for the untimely filing of an application for reopening. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481,634 N.E.2d 1027; State v. Trammel (July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State v. Travis (April 5, 1990), Cuyahoga App. No. 56825, unreported, reopening disallowed (Nov. 2, 1994), Motion No. 51073, affirmed (1995), 72 Ohio St.3d 317, 649 N.E.2d 1226. Additionally, ignorance of the law does not constitute good cause for failing to timely file an application for reopening. State v. Turner (Nov. 16, 1989), Cuyahoga App. No. 55960, unreported, reopening disallowed (Aug. 20, 2001), Motion No. 23221; State v. Railing (Oct. 20, 1994), Cuyahoga App. No. 67137, unreported, reopening disallowed (Aug. 30, 1996), Motion No. 72596, at 2. Accordingly, McKinley's application is fatally defective and must be denied.
The doctrine of res judicata also prohibits this court from reopening the original appeal. Errors of law that were either raised or could have been raised through a direct appeal may be barred from further review vis-a-vis the doctrine of res judicata. See, generally, State v. Perry
(1967), 10 Ohio St.2d 175, 226 N.E.2d 1204. The Supreme Court of Ohio has further established that a claim for ineffective assistance of counsel may be barred by the doctrine of res judicata unless circumstances render the application of the doctrine unjust. State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204.
Herein, McKinley, through the Office of the Public Defender, sought to appeal his case to the Supreme Court of Ohio which eventually denied his appeal. Because the issue of ineffective assistance of appellate counsel and the substantive issues listed in the application for reopening could have been raised, res judicata now bars re-litigation of these matters.State v. Hicks (Oct. 28, 1982), Cuyahoga App. No. 44456, unreported, reopening disallowed (Apr. 19, 1994), Motion No. 50328, affirmed (Aug. 3, 1994), 70 Ohio St.3d 1408, 637 N.E.2d 6. We further find that the application of res judicata would not be unjust in this matter.
Likewise, the affidavit of Applicant which accompanies the application to reopen fails to comply with App.R. 26(B)(2) which provides, in part:
An application for reopening shall contain all of the following:
(D) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and reference to the record * * *.
In his affidavit, McKinley avers that his appellate counsel was ineffective because "every contention purported by appellate counsel was deemed to lack merits, and therefore failed at the adversarial testing process (sic)." McKinley, however, does not state in what ways appellate counsel was deficient in respect to his assignments of error. Accordingly, we must hold that the affidavit does not set forth "the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal * * *." App.R. 26(B)(2)(d). McKinley's failure to comply with App.R. 26(B)(2)(d) is a sufficient basis for denying the application for reopening. See, e.g.,State v. Towns (Oct. 23, 1997), Cuyahoga App. No. 71244, unreported, reopening disallowed (May 4, 2000), Motion No. 6308, at 4-5.
Notwithstanding the above, McKinley fails to establish that his appellate counsel was ineffective. In regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld an appellate attorney's discretion to decide which issues he or she believes are the most fruitful arguments. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308. Additionally, appellate counsel is not required to argue assignments of error which are meritless. Barnes,supra.
Thus, in order for the Court to grant the application for reopening, McKinley must establish that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5).
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issue he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus, [applicant] bears the burden of establishing that there was a "genuine issue" as to whether there was a "colorable claim" of ineffective assistance of counsel on appeal.
State v. Spivey (1998), 84 Ohio St.3d 24, 701 N.E.2d 696, at 25. To establish such claim, applicant must demonstrate that counsel's performance was deficient and that deficiency prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 688, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. McKinley failed to demonstrate any such deficiency.
Furthermore, a substantive review of the application to reopen fails to demonstrate that there exists any genuine issue as to whether McKinley was deprived of the effective assistance of appellate counsel. In his first assignment of error, McKinley claims that his guilty plea was not an intelligent or knowing plea[1] as he was not informed of the nature of the offense, and that "it could not be conceivably concluded that a defendant would enter a plea of guilty to an offense which the sentence would be predicated on aggravating factors brought up in a trial which he was only a witness for the state in."
Before the trial court accepted McKinley's plea, the prosecutor placed the plea bargain on the record:
 After having fully pre-tried this matter with the defendant's attorney, it is now the State of Ohio's understanding that the defendant, Mr. McKinley, wishes to withdraw his previously entered plea of not guilty, and enter a plea of guilty to the amended count one in the indictment, to be amended to charge him with involuntary manslaughter, pursuant to Revised Code 2903.03, Section A. As amended, that is a felony of the first degree. It carries a possible three to ten year sentence term with a presumption of incarceration. The indictment, count one, is to be amended without any firearm specifications.
 It is also the State's understanding that the defendant has agreed to cooperate fully with law enforcement officials, and to testify truthfully in all matters with his co-defendants and concerning all others involved. Should the defendant not meet any of the conditions, the State of Ohio reserves the right to withdraw the plea.
 Should such plea be forthcoming, the State of Ohio would then move to dismiss counts two, three, four and five of the indictment.
The court then inquired of Mr. McKinley's attorney as to the nature of the plea bargain to which he responded:
 Yes, Judge. Counsel for the State, your honor, has aptly and correctly stated the plea understanding that has been communicated to the defendant, and he's prepared to accept those conditions.
The trial court then asked Mr. McKinley if this is what he wanted to do. Mr. McKinley responded, "Yes, your honor." After reviewing the constitutional rights Mr. McKinley was waiving by entering a guilty plea, the court engaged in the following colloquy with Mr. McKinley:
 Court: Okay. Very well. As they amended this charge on the offense of involuntary manslaughter, 2903.04(A), the claim is made that on November 13th of last year, in Cuyahoga County, you caused the death of another person, namely Ethel Watkins, and you did that as a proximate result of your committing or attempting to commit a felony. Do you understand that charge?
McKinley: Yes.
 Court: That's a first degree felony. A first degree felony, the assumption is in the State of Ohio, that you will serve a prison term.
McKinley: Yes.
 Court: And that would be a three year or four year or five year, all the way up to a ten year prison term in Lorain Correctional. The court picks the number of years, and you have to serve virtually everyday of the number of years that I pick.
* * * Do you understand that?
McKinley: Yes.
Court: Any questions?
McKinley: No.
 Court: Okay. Any questions at all about the involuntary manslaughter charge against you, and the penalties attached, knowing of course that you get this plea bargain because you are willing to testify and cooperate with the State of Ohio, if called upon to do so, right?
McKinley: Yes.
Court: Okay, any questions?
McKinley: No.
 Court: Tell me how you want to plead to involuntary manslaughter?
McKinley: Guilty.
"In determining whether a guilty plea is voluntarily, intelligently and knowingly made, especially regarding the defendant's understanding of the nature of the charge, the court looks to the totality of the circumstances." State v. Carter (1979), 60 Ohio St.2d 34, 396 N.E.2d 757, certiorari denied (1980) 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789;State v. Cavillo (1991), 76 Ohio App.3d 714, 603 N.E.2d 325.
The above record demonstrates that appellant's plea was knowingly and intelligently made. First, neither McKinley nor his counsel ever suggest to the trial court that they did not understand the nature of the offense. Additionally, after the trial court explained the offense Mr. McKinley was pleading guilty to, McKinley stated that he understood the offense. Finally, the court made McKinley specifically aware that he could be sentenced to ten years in prison to which McKinley stated that he understood. Accordingly, based upon the totality of the circumstances, McKinley's assertion that his plea was not knowingly or intelligently made lacks merit, and appellate counsel was not ineffective for failing to raise this argument.
In his second assignment of error, McKinley states that the court abused its discretion during sentencing "when it considered evidence from a charge which he was acquitted." In support of his argument, McKinley cites State v. Wells (1999), 133 Ohio App.3d 392, 728 N.E.2d 408. However, we find that the reasoning behind Wells does not apply to this case. In this matter, the record indicates that the court never indicated that it was sentencing McKinley for an offense other than involuntary manslaughter. However, even if the court considered the higher degree offense, the imposition of a maximum sentence need not be reversed and remanded if the court finds independently on the record that a maximum sentence is necessary pursuant to R.C. 2929.14(C). See State v. Halmi
(August 16, 2001), Cuyahoga App. No. 78485, unreported; State v. Wright
(Mar. 2, 2000), Cuyahoga App. No. 76596, unreported.
In this matter, sub judice, the record indicates that McKinley was sentenced to a maximum prison term because the court found, based upon his previous criminal conduct, that he posed the greatest likelihood of committing future crimes. In making such finding, the court complied with R.C. 2929.14(C) and 2929.19(B)(2)(d). Accordingly, the court did not abuse its discretion in sentencing McKinley to a maximum sentence for involuntary manslaughter.
Accordingly, the application to reopen is denied.
KENNETH A. ROCCO, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] In his application to reopen, McKinley admits that his guilty plea was voluntary.